## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ADEBISI TAFIKE ADIGUN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:13-CV-1281-NJR** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

# <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Petitioner Adebisi Tafike Adigun's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (hereinafter § 2255) (Doc. 1). As ordered by this Court, the United States filed a response (Doc. 17), and Adigun filed two successive replies (Docs. 25 and 29). Additionally, Adigun filed a Motion to File on the Court's Fast Track Docket (Doc. 36), Motion to Expedite (Doc. 37), Notice of Inquiry and Motion to Receive Content (Doc. 38), Motion to Sever (Doc. 39), Motion for Status Report (Doc. 40), and Motion for Fast Track Partial Summary Judgment (Doc. 41). For the reasons set forth below, Adigun's § 2255 motion is denied, and his remaining motions (Docs. 36, 37, 38, 39, 40, and 41) are denied as moot.

### BACKGROUND

The events giving rise to Adigun's underlying criminal case began on March 16, 2010, when Adigun was observed by a police officer sitting in a van with an open

container of beer on the vehicle's console (CR 176).[1] When the officer asked Adigun to pour the beer out, he saw him drop a plastic bag out of the passenger side window (*Id.*). When the officer inquired about the bag, Adigun responded, "Well, that's my girlfriend's. She likes to smoke crack." (*Id.* at 3). Adigun was then placed under arrest.

The next month, on April 7, 2010, Adigun was stopped for driving a vehicle with an expired license plate (CR 176). He was driving to Chicago along with his girlfriend, Jessica Marczewski (*Id.*). The arresting officer claimed to have seen beer bottles missing from a six pack in the vehicle and suspected the two might be intoxicated (*Id.*). After being escorted to the patrol car, Adigun allegedly gave the officer consent to search the vehicle (*Id.*). Adigun denies any consent. During the search, the officer discovered crack cocaine lodged beneath a booster seat, and Adigun and Marczewski were both arrested (*Id.*).

On August 3, 2010, Adigun was charged in a Superseding Indictment with one count of conspiracy to distribute and two counts of possession with intent to distribute crack and powder cocaine (CR 34). Marczewski was charged with aiding and abetting Adigun on the conspiracy to distribute count and one of the possession counts (*Id.*). Adigun retained attorneys N. Scott Rosenblum, Adam Fein, and Marc Johnson from the law firm of Rosenblum, Schwartz, Rogers & Glass, PC to represent him.

Marczewski quickly pleaded guilty, and she entered into a cooperating agreement with the Government and provided law enforcement with information about

---

[1] Citations to criminal case no. 4:10-CR-40033-JPG are designated "CR", while citations to civil case no. 3:13-CV-1281-NJR are designated "Doc.".

Adigun's drug dealings (and her own) (CR 51, 52). She said that on the day before her arrest, she witnessed Adigun wire $4,000.00 via Western Union for the purpose of purchasing cocaine (CR 52). Afterwards they traveled together to Chicago and retrieved the cocaine (*Id.*). Adigun and Marczewski were eventually arrested on the return trip (*Id.*). She also provided information about hand-to-hand drug deliveries she made for Adigun and firearms inside the house she shared with Adigun (*Id.*).

Adigun moved to suppress the evidence seized during the two arrests (CR 64), and he was successful as to the April 7 arrest with Marczewski (CR 79). Now retired District Judge G. Patrick Murphy granted the motion to suppress, reasoning that the Government did not meet its burden of proof to establish that Adigun consented to the search of the vehicle (CR 79-80). Shortly before the trial was set to begin, the Government asked the Court to reconsider its ruling based on a new theory that Adigun did not have standing to challenge the search because he was driving a borrowed car and had no legitimate expectation of privacy (CR 97). Following a hearing on the matter, Judge Murphy agreed that Adigun failed to satisfy his burden of showing that he had an expectation of privacy, and he overturned the previous order suppressing the seizure, allowing all of the evidence to come in against Adigun (*see* CR 165).

Adigun's attorney then asked the Court to reconsider yet again (CR 103), and Judge Murphy allowed the attorney to make an offer of proof regarding Adigun's expectation of privacy (*see* CR 167). Adigun took the stand and answered a litany of questions from his attorney and the Government (*see id.*). Judge Murphy found that there was nothing that suggested Adigun was given permission to take the car to Chicago (*Id.*

at p. 44), and therefore he did not have an expectation of privacy. Judge Murphy went on to comment about Adigun's credibility. He stated, "I don't believe one word that this defendant tells me. I don't think he has any credibility . . . I don't believe one single word that he told me. He makes up his testimony as he goes along. He is a - - he is a facile, if not an accomplished, liar. He lies easily and quickly and often, but he's not very good [at] it." (*Id.* at p. 46). Consequently, Judge Murphy stood by his ruling that all of the evidence would come in against Adigun (*Id.*).

On the morning of trial, Adigun asked for a continuance and a new lawyer (CR 176). He was dissatisfied with his counsel's outlook following the reversal of previously suppressed evidence (*Id.*). He stated, "I just don't think that my counsel is ready at this time, and . . . his perspective on appeal to the output of the trial, I don't think, is in my best interest." (*Id.* at 5). Adigun's lawyers advised that they were in fact ready to try the case (*Id.*). Judge Murphy denied the continuance and request for a new lawyer and gave Adigun some time to decide whether he wished to proceed with trial (*Id.*). After speaking with his sister, Adigun elected to plead open, without a plea agreement (*Id.*).

At sentencing, Judge Murphy sustained a number of Adigun's objections to the PSR and adopted his calculation of drug quantity over that offered by the probation office (CR 176). But Judge Murphy overruled Adigun's objection to the two-level enhancement for possession of a dangerous weapon during the commission of a drug trafficking offense (CR 164, pp. 130–32). Judge Murphy determined the guideline range to be 151-188 months' imprisonment, with a mandatory minimum sentence of 120 months. Finding that Adigun was "dishonest," "manipulative," and "very dangerous",

he was sentenced to a low end guideline sentence of 151 months' imprisonment.

Adigun filed a timely appeal arguing that the district court erred by failing to suppress contraband seized from his vehicle and by incorrectly calculating a mandatory minimum ten year sentence (CR 176). The Seventh Circuit Court of Appeals denied the appeal on both points, finding first that an unconditional guilty plea precluded a challenge to the denial of a motion to suppress, and second that the error in calculating his mandatory minimum was harmless because his sentence was not affected by the error (*Id*.).

Adigun filed his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on December 12, 2013 (Doc. 1). In his petition, Adigun made the following claims:

    I.    Counsel was ineffective for failing to advise him that he waived his right to appeal pretrial motions by pleading guilty.

    II.    Adigun's guilty plea was defective, rendering his guilty plea unknowing and involuntary.

    III.    Counsel was ineffective because they failed to raise the issue that the Government forfeited the standing issue by not addressing it or before the original suppression hearing.

    IV.    Counsel was ineffective for failing to raise the argument during the suppression hearing that the driver of a vehicle has a presumptive right to drive the vehicle.

    V.    Counsel was ineffective for failing to investigate and present evidence that he had permission to use Tracy Borah's vehicle on April 7, 2010.

    VI.    Counsel was ineffective for failing to investigate and present counter evidence that he had not possessed a firearm in furtherance of a drug trafficking crime.

LEGAL PRINCIPLES

## I.     Evidentiary Hearing

A 28 U.S.C. § 2255 motion does not mandate an evidentiary hearing. *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996); *see also Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). "[A] district court *must* grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (emphasis in original) (internal quotations omitted). But if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a hearing is not required. *Id*. Allegations that are "vague, conclusory, or palpably incredible rather than detailed and specific" do not warrant a hearing. *Bruce*, 256 F.3d at 597. Likewise, "mere speculation" does not warrant an evidentiary hearing, as the petitioner "must file [a] detailed and specific affidavit showing he has actual proof of allegations he is making." *Miller v. United States*, 183 Fed. Appx. 571, 578 (7th Cir. 2006). For evidentiary hearing consideration, the Seventh Circuit requires a petition made pursuant to 28 U.S.C. § 2255 to "include an affidavit setting forth the specific basis for relief." *Kafo*, 467 F.3d at 1067. An affidavit accompanying the petition is a threshold requirement; "its absence precludes the necessity of a hearing." *Id*. The specific allegations in the petition and accompanying affidavit must go beyond merely unsupported assertions, as "[m]ere unsupported allegations cannot sustain a petitioner's request for a hearing. *Prewitt*, 83 F.3d at 819.

Though Adigun requests an evidentiary hearing, the Court does not find one warranted in this case. Adigun provides substantial factual allegations, which are

backed up in large part by his trial counsel's affidavits. But he does not allege facts that—if proven—would entitle him to relief. The Court's careful review of the motions and entire record leads the Court to conclude an evidentiary hearing is not required in this case, and the Court will resolve the motion without a hearing.

## II.   Collateral Review under 28 U.S.C. § 2255

Relief under 28 U.S.C. § 2255 is limited and "available only in extraordinary situations." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013); *Prewitt*, 83 F.3d at 816. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 may be used only to correct errors that vitiate the sentencing court's jurisdiction, are of constitutional magnitude, or constitute a fundamental defect that inherently resulted in a complete miscarriage of justice. *See* 28 U.S.C. § 2255; *Blake*, 723 F.3d at 879; *accord Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). *Prewitt*, 83 F.3d at 816

Habeas relief through a § 2255 motion is not a substitute for direct appeal. *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Specifically, a § 2255 motion cannot raise:

> (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original) (overruled on other grounds by *Castellano v. United States*, 26 F.3d 717 (7th Cir. 1994)).

The Supreme Court has held, however, "that an ineffective-assistance-of-counsel

claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). In fact, "ineffective assistance claims are generally best addressed through a motion in collateral proceeding pursuant to § 2255 because 'the trial record is not developed precisely for the object of litigating or preserving the claim . . . [and] in many cases will not disclose the facts necessary to decide either prong of the Strickland analysis.'" *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) (*quoting Massaro*, 538 U.S. at 505). Thus the procedural restrictions outlined in *Belford* cannot bar a § 2255 claim based on ineffective assistance of counsel.

## DISCUSSION

All but one of Adigun's claims relies on a theory of ineffective assistance of counsel. *See supra* p. 5. The heavy burden of showing ineffective assistance of counsel rests squarely on the shoulders of the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court's review of an attorney's conduct "is 'highly deferential,' with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) (*quoting Strickland*, 466 U.S. at 689).

When evaluating a § 2255 motion claiming ineffective assistance of counsel, a court will apply the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (*citing Strickland*, 466 U.S. at 688, 690, 694). The first prong requires the petitioner to demonstrate that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. For a counsel's performance to be considered deficient, the petitioner must show

"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*. The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. *Id*. The petitioner "must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Importantly, a court does not need to analyze both prongs of the test, as a petitioner's failure to satisfy either prong is sufficient to defeat his claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (*citing United States v. Slaughter*, 900 F2d 1119, 1124 (7th Cir. 1990)). Furthermore, the petitioner must provide objective evidence in support of his claim. *Strickland*, 466 U.S. at 687-88.

## I.     Consequence of a Guilty Plea

Adigun argues that his counsel was ineffective for erroneously advising him that he would retain the ability to appeal pretrial motions if he pleaded guilty. Mr. Fein and Mr. Johnson confirm the error (Docs. 20, 21). Adigun asserts that he would not have pleaded guilty had he known he would not be able to later appeal pretrial motions, namely the adverse suppression rulings.

For the sake of this discussion, the Court assumes that counsel's erroneous advice to Adigun was objectively unreasonable and thus satisfies the first prong of the ineffective assistance analysis. However, "[m]istakes in an attorney's advice to a client do not constitute, per se, ineffective counsel." *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (citing *United States v. Teller,* 762 F.2d 569, 577 (7th Cir. 1985)). Accordingly, the Court must decide whether counsel's deficient performance prejudiced the defense.

When challenging a guilty plea, the prejudice prong is met where the defendant can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morales v. Boatwright*, 580 F.3d 653, 659 (7th Cir. 2009) (citing *Strickland,* 466 U.S. at 688, 694). In other words, the defendant "would not have pled guilty, but would have insisted upon a trial." *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). But "a mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (quoting *Berkey v. United States,* 318 F.3d 768, 772-73 (7th Cir. 2003)). "The defendant must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Cieslowski*, 410 F.3d at 359 (citing *Berkey*, 318 F.3d at 773). The Court's analysis of prejudice should focus on "what a reasonable person would do 'without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (quoting *Hill*, 474 U.S. at 60).

Adigun submitted an affidavit in which he swears that "I would have never pled guilty had I known that by doing so, I was waiving my right to appeal pre-trial issues. I would have went to trial, win or loss [sic] to preserve my right to appeal." (Doc. 2, p. 24). As evidence that he would have gone to trial, Adigun points out that he rejected three previous plea agreements because, by virtue of pleading guilty to a "drug trafficking offense," he would have been subject to deportation (Doc. 1-3, p. 14). He also argues that if he was successful in appealing the adverse suppression rulings, then his case would

have been "effectively dispose[d] of" because "count 3 of the indictment would have been dismissed [and] there is a very strong probability of acquittal on count 1 . . . and count 2 undermined." (Doc. 1-4, pp. 3, 12). As a result, his sentence would have been "dramatically reduced" (*Id.* at p. 3).

The crux of Adigun's argument is his apparent belief that it was imperative to preserve his right to appeal the suppression rulings because a successful appeal would have overturned his conviction, and he would be able to escape deportation. In order to address Adigun's argument, the Court must imagine that Adigun elected to go to trial and was convicted.[2] The Court must then predict whether an appeal of adverse suppression ruling would have been successful. In this instance, as the Seventh Circuit has already alluded to, a successful appeal was not reasonably probable.[3]

The issue central to the motion to suppress was whether Adigun had an expectation of privacy in a vehicle that indisputably did not belong to him. The answer to that question turned on whether Adigun had permission to use the vehicle from its owner. *See Johnson v. United States*, 604 F.3d 1016, 1020 (7th Cir. 2010) (citations omitted) ("Courts have repeatedly recognized the right of a driver to assert a Fourth Amendment right to be free from unreasonable searches of a vehicle where the driver is operating

---

[2] There is almost no doubt that Adigun would have been convicted at trial (*see, e.g.,* CR. 125 at pp. 15–16--defense counsel admitting that the evidence against Adigun is "bad" and he thought that Adigun "was going to be convicted"; CR. 167 (Seventh Circuit noting that "the likelihood of conviction would have been quite high after the district court admitted physical evidence from the arrests.")).

[3] In a footnote in its opinion on Adigun's direct appeal, the Seventh Circuit stated that "the merits of Adigun's Fourth Amendment objections [were] far from obvious." *Adigun*, 703 F.3d at 1020 n.1. The Court noted that Judge Murphy denied the motion to suppress in part because he "found Adigun untrustworthy and no longer credited his account of the arrest," and "[a]ppellate courts typically defer to such credibility judgments by a trial court." *Id.*

that vehicle with the permission of the owner.") And the answer to that question depended heavily on Adigun's own statements regarding how he came to possess the car. Simply put, the suppression motion boiled down to a credibility finding. As indicated above, Judge Murphy found Adigun's statements to be utterly unworthy of belief. When the district court's suppression decision depends on a credibility determination, that determination is accepted by the appellate court unless it is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Eddy*, 8 F.3d 577, 580 (7th Cir. 1993). The record is rife with Adigun's conflicting story lines, suggesting that Judge Murphy's credibility finding was anything but off-the-mark. Therefore, it seems to this Court that the Seventh Circuit would have little reason rule in his favor on appeal.

Even if that is wrong, and the Seventh Circuit found that Judge Murphy erred in denying the motion to suppress, it is not reasonably probable that Adigun's conviction would have been overturned, despite his contention to the contrary. As the Government pointed out, even if the evidence seized from the car was suppressed, there was still ample evidence linking Adigun to the charged crimes. In particular, Jessica Marczewski was prepared to testify that she lived with Adigun, knew that he sold drugs, and that at his direction, she did some hand-to-hand drug deliveries to his customer (CR 52; Doc. 17). She would further testify that she was with Adigun when he wired $4,000 to Chicago in order to purchase cocaine (CR 52; Doc. 17). She then traveled with Adigun to Chicago where he picked up the cocaine and hid it in the child booster seat of the car to transport it back home (CR 52; Doc. 17). Law enforcement officials were also prepared to

testify about Adigun's admissions that went to Chicago to obtain cocaine (CR 125, p. 30; Doc. 17.) Two co-conspirators and a number of Adigun's customers were also prepared to testify, and there were money orders, wire transfers, and cell phone records to corroborate their testimony (CR 125, p. 31; Doc. 17). That evidence is certainly sufficient for a jury to convict Adigun on all three counts of the Superseding Indictment without taking into account the physical evidence seized from the car. Thus, it seems that the admission of the tainted evidence would have been harmless error, and it is certainly not a foregone conclusion that the Seventh Circuit would have ordered a new trial. *See United States v. Lee*, 618 F.3d 667, 673 (7th Cir. 2010).

Furthermore, Adigun's claim that if he prevailed on appeal the Government would have dismissed some or all of the charges is nothing more than rank speculation. The Government indicates that it is unlikely that it would have dismissed any of the charges (*see* Doc. 17, p. 25), and the Court has no reason to doubt that representation. The Government did not dismiss any of the charges after Judge Murphy's initial ruling that the evidence should be suppressed, so why would the Government do so after the Seventh Circuit reached that conclusion?

While the Court appreciates Adigun's frustration that he was given erroneous advice from his counsel, the error was not prejudicial because it is not reasonably probable that Adigun would have achieved his hoped-for outcome on appeal. He has not set forth any objective evidence that the ultimate result of the criminal proceeding—his conviction and sentence—would have been any different had he been able to appeal the adverse suppression ruling. In other words, Adigun has not shown

that he had anything to gain from having the physical evidence excluded. Accordingly, there is nothing that would lead the Court to conclude that it would have been objectively reasonable to not plead guilty and insist upon a trial. Consequently, the mistaken advice from his attorney cannot give rise to a claim of ineffective assistance.

## II.    Plea Colloquy

Next, Adigun challenges his plea colloquy as defective because Judge Murphy failed to ask him whether his guilty plea was induced by a promise and failed to mention any waiver of appeal rights. Had he done so, Adigun asserts that he would have informed Judge Murphy that his guilty plea was induced on the promise that he could appeal his pretrial motions. Accordingly, Adigun claims that because the plea colloquy was defective, and his counsel was ineffective for failing to withdraw or correct his plea and for failing to raise the issue on appeal.

This is simply another attack on his counsel's erroneous advice about his ability to appeal the suppression motions. This argument can be disposed of quickly. The Seventh Circuit has held that "the trial court is not obligated to inform defendants of the consequences of an unconditional plea on a potential appeal." *United States v. Adigun*, 703 F.3d 1014, 1020 (7th Cir. 2012) (citing *United States v. Fisher*, 772 F.2d 371, 375 (7th Cir. 1985)). While "it would have been preferable for the district court to have expressly advised [Adigun] of the full extent of the waiver," it was not obligated to do so. *Adigun*, 703 F.3d at 1020. Consequently, the plea colloquy cannot be considered constitutionally defective, and therefore counsel was not ineffective for failing to withdraw the plea.

### III.     Motion for Reconsideration

Adigun next argues that his counsel was ineffective because, after the Government filed its motion to reconsider, his attorneys did not argue that the Government had forfeited the argument on standing by not raising it initially.

In response to Adigun's claim, Mr. Fein indicated that prior to the hearing on the motion to reconsider, he researched the viability of an argument that the government forfeited its standing claim by failing to raise it previously (Doc. 21). However, "he could not locate a case to support a meaningful claim of forfeiture," and instead "found a smattering of cases, each of which suggested a motion to reconsider lay in the discretion of the trial court" (Doc. 21).

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984).

Mr. Fein had only twenty-four hours between the filing of the Government's motion and the hearing on the motion (Doc. 21, p. 3).[4] In that time, counsel's research mostly revealed that the trial court enjoyed wide discretion in dealing with motions for reconsideration (*Id.*). The Court agrees. *See e.g.*, *United States v. Raddatz*, 447 U.S. 667, 678 n. 6 (1980) ("Nothing in the Magistrates Act or other statute precludes renewal at trial of

---

[4] The Notice of Electronic Filing indicates that the Government's motion to reconsider was filed on October 14, 2010 at 4:11 p.m. (Doc. 97). The next day, the Court instructed counsel that they should be prepared to argue that merits of that motion at the hearing that was previously scheduled for 1:00 p.m. that day (Doc. 99).

a motion to suppress evidence even though such motion was denied before trial. A district court's authority to consider anew a suppression motion previously denied is within its sound discretion."). It is clear that Adigun's counsel investigated the theory of forfeiture and made a strategic decision based on adequate investigation. This is not ineffective assistance.

## IV.   Failure to Argue *United States v. Garcia*

Adigun further asserts that his counsel was ineffective for failing to make the argument in response to the Government's motion for reconsideration that the driver of a vehicle is presumed to have permission to be driving it, as outlined in *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990). But counsel made this precise argument in its own motion for reconsideration stating, "[t]hus, as in *Garcia*, the government here has failed to prove by a preponderance of the evidence that Borah's car was in fact stolen." (CR. 103, p. 8). As such, Adigun's claim on this point is meritless.

## V.   Failure to Investigate Permissive Use of Borah's Vehicle

Adigun also asserts that his counsel failed to adequately investigate whether he had permission to utilize Tracy Borah's vehicle on April 7. Specifically, he posits that if his counsel had called Jessica Marczewski and Tracy Borah to the stand, Judge Murphy would have been persuaded that he had permission to use the vehicle.

As set forth above, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984). Mr. Fein indicated in his affidavit that a hired investigator subpoenaed four witnesses, including Tracy Borah, to testify if needed (Doc.

21). Pursuant to the subpoenas, all four witnesses appeared at the Benton courthouse on October 18, 2010, in order to offer testimony regarding Adigun's motion to reconsider the ruling that the evidence should not be suppressed (*Id.*). After speaking to each witness, Mr. Fein determined that none of the witnesses provided information helpful to the case (*Id.*). In fact, they provided information adverse to Adigun (*Id.*). As such, Mr. Fein elected not to call them to the stand (*Id.*).

Additionally, Mr. Johnson met with the Government to review the contents of a cell phone seized from Tracy Borah's car (Docs. 21, 22). Mr. Johnson discovered that some of the evidence on the phone was favorable to Adigun and contradicted the Government's claim that Board did not give Adigun permission to use her car (Docs. 21, 22). That evidence was presented to the Court (Docs. 21, 22).

In sum, counsel provided a thorough investigation of law and facts with respect to Adigun's use of Borah's vehicle. The strategic choice was made not to call witnesses to the stand. The Court is entirely unpersuaded that this decision amounts to ineffective assistance.

**VI.     Failure to Investigate Firearm Enhancement at Sentencing**

Adigun received a two-level enhancement for possession of a dangerous weapon in connection with a drug-trafficking offense pursuant to United States Sentencing Guideline § 2D1.1(b)(1). Adigun complains that his counsel was ineffective for failing to investigate and offer evidence that he did not possess a firearm in furtherance of his crime. His primary contention is that Jessica Marczewski's friend, Amanda Ristivio, should have been investigated and called to testify on his behalf, as she owned the

firearm in question. Adigun asserts that Ristivio would have testified that "she never had any type of dealings with [him], never gave him a firearm, and that it was not true that [he] could have retrieved the firearm in question from her residence because she owned a pit bull" (Doc. 1-5, p. 16).

In response to Adigun's claim, Mr. Fein indicated that his investigation did not reveal any counter-evidence to offer on the issue of the enhancement, and Adigun "never directed counsel to any such counter-evidence" (Doc. 21). Adigun's speculation regarding Ristivio's testimony does not constitute competent evidence. Furthermore, regardless of what Ristivio may have testified to, application of the enhancement was justified based on the fact that a gun was found in the home that Marczewski and Adigun shared. *See United States v. Acosta*, 534 F.3d 574, 588 (7th Cir. 2008) (holding that a defendant is considered to have possessed a firearm, for purposes of enhancement, "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense" or the "co-conspirators possessed firearms in furtherance of the conspiracy and defendant could have reasonably foreseen the coconspirators' possession.") Accordingly, Adigun's claim for ineffective assistance is meritless.

## VII.   Failure to Address Mitigating Factors During Sentencing

In his Supplemental Petition (Doc. 6), Adigun argues that his counsel was ineffective for failing to investigate certain mitigating evidence and present argument under the section 3553(a) sentencing factors, and his appellate counsel was ineffective for failing to raise the same on appeal. More specifically, he takes issue with the sentencing court's opinion that he was "dishonest," "manipulative," "utterly

unproductive," and "dangerous" (*see* Doc. 164, p. 161, 163-4). Adigun asserts that his counsel should have presented mitigating evidence of his previous enrollment in community college, small business ownership, digital music distribution deal, and the fact that he paid taxes.

18 U.S.C. §3553(a) provides the framework for sentencing courts to follow when making a sentencing determination. Among the factors to be considered are the nature and circumstances of the crime, the history and characteristics of the defendant, and various purposes of sentencing. 18 U.S.C. § 3553. In a nutshell, Adigun is arguing that his counsel failed to adequately address his history and characteristics during sentencing.

As discussed throughout this order, however, counsel's strategic decisions are afforded deference. *See United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002); *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984). Counsel is not ineffective for failing to raise every conceivable non frivolous argument. *Strickland*, 466 at 689. Additionally, "[a]ppellate lawyers are not required to present every non frivolous claim on behalf of their clients—such a requirement would serve to bury strong arguments in weak ones—but they are expected to select the most promising issues for review." *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013).

In light of this precedent, it was entirely reasonable for counsel, both sentencing and appellate, to forego the mitigation argument Adigun raises and to focus on those arguments with greater potential for success. Indeed, sentencing counsel chose to focus on the purpose of sentencing and the disparate treatment in the guidelines between

crack and powder cocaine (see Doc. 21, p. 7-8). And, of course, the work history to which Adigun refers was available to Judge Murphy in the PSR. Counsel made a strategic decision to deemphasize Adigun's history and characteristics, and this Court sees no indication of ineffective assistance for that decision.

## VIII.   Mandatory Minimum Calculations

Adigun's final argument is aimed at the ten year mandatory minimum applied during his sentencing. He argues that his counsel was ineffective for failing to present argument that he should be subject to only a five year mandatory minimum. But Adigun brought this claim on direct appeal, and it was denied on harmless error grounds, because he was sentenced above the ten year mandatory minimum. *Adigun*, 703 F.3d at 1022-23. The Seventh Circuit forbids a prisoner from relitigating in a collateral proceeding an issue that was decided on direct appeal. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). Therefore, this claim must be denied.

### CERTIFICATE OF APPEALABILITY

Should Adigun desire to appeal this Court's ruling dismissing his motion, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000). Adigun need not show that his appeal will succeed, but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 338 (2003). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate of appealability. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that Adigun has not stated any grounds for relief under § 2255, and reasonable jurists could not that conclusion. Thus, Adigun has not made "a substantial showing of the denial of a constitutional right," and a certificate of appealability will not be issued.

## CONCLUSION

Ultimately, Adigun is unable to set forth sufficient allegations to demonstrate the he is entitled to relief. Consequently, his motion for relief (Doc. 1) pursuant to 28 U.S.C. § 2255, including the supplemental petition (Doc. 6), is **DENIED**, and this action is **DISMISSED with prejudice**. The remaining motions (Docs. 36, 37, 38, 39, 40, and 41), all requesting resolution of this matter, are consequently **DENIED as moot**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

DATED:   **April 20, 2015**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**